Bay, J.
The questions presented for our consideration are rendered practically unimportant, further than they affect this case, by the act of May 1, 1871, “ amendatory of, and supplementary to, the act entitled an act to create a lien in favor of mechanics and others in certain eases.” 68 Ohio L. 107.
The judgment sought to be reversed by this proceeding was rendered before the passage of that act, and the ‘controversy in this case is not affected by it, but must be determined by the law as it stood before the passage of the amendatory act.
The amount remaining due on a building contract between the owners and contractors having been brought *401 into court by the owner, the only controversy- Í3 between two subcontracting firms as to which of them is entitled to the fund.
The contractors were indebted to both firms for labor-performed and materials furnished in the erection of the building, and each of them sought payment by obtaining-the amount due to the contractors from the owner — one by assignment of the claim by the contractors; the other by proceeding under the mechanics’ lien law.
The firm of J. & T. Mantón, on the 20th day of September, 1867, obtained, in satisfaction of their claim against the contractors, an assignment to them by the contractors of the amount remaining unpaid on their contract with the owner. The fairness of this transaction is not disputed. The assignment was bona ficle, and for a valuable consideration, being in payment of the assignors’debt to the assignees. It had the effect to discharge-the claim of the latter against the former, and to divest the contractors of their right against the owner to-the amount due on the contract, and to invest it in the Mantona. The owner “ immediately became their debtor,, and was no longer the debtor of” the contractors (Tazewell v. Barrett & Co., 4 Hen. & Mun. 264), and, under the provisions of the code, the Mantons might at once have brought an action against the owner in their own names to recover the amount due. In effect, therefore,, they -were then the legal as well as equitable owners of the claim.
It is true they held only such right as the assignors had therein, and took it subject to all the equities existing between the assignors and the debtor, at the time he had notice of the assignment. The time he first received such notice does not appear; nor is it material when it was, unless it became so for the equitable protection of the debtor, or of a bona fide purchaser. Davenport v. Woodbridge,, 8 Greenl. 17; Bishop v. Holcomb, 10 Conn. 444; Dearl v. Hall, 3 Russ. Ch. 1.
*402 The right of the assignees to the fund, then, would seem on principle to be paramount to any right subsequently acquired, which is not entitled to such equitable protection. But the other party claiming the fund stands in no position to claim such protection, for the claim of that firm is supported by no consideration but that of a pre-existing debt against the contractors, which remains unaffected. They parted with nothing as a consideration for the lien claimed by them. A right or lien obtained merely in security of a pre-existing debt, without any other consideration, does not draw to it the equitable protection afforded to bona fide purchasers. Roxborough v. Messick, 6 Ohio St. 448; Lewis v. Anderson, 20 Ohio St. 281. Moreover, for aught that appears, they and the debtor had notice of the assignment before any steps were taken by them to appropriate the debt of the owner to the contractors to the satisfaction of the debt of the latter to them. They must, then, be able to establish a claim on the fund that antedates that of the other parties, or that supersedes it in law or equity.
The claim of Copeland & Co. to .the fund in dispute is based solely upon the act of 1843, “ to create a lien in favor of mechanics, and others, in certain eases.” S. & C. 833. They proceeded, on the 1st day of October, 1867, as subcontractors, and served the owner with an attested copy of their account against the contractors, in accordance with the second section of that act, to appropriate the amount ■due from the owner to the contractors to the payment of the debt due from the latter to them. This was ten days ■after the same debt, thus sought to be appropriated, had been assigned to the Mantona. It is essential, then, to inquire when the lien of Copeland & Co., if any they acquired, attached.
The act, under which the lien is claimed, provides for two classes of cases. The one is that of persons employed by the owner of the building, to furnish materials for, or ■to perform labor in the erection thereof. The other is that of subcontractors with the persons so employed by the owner. To the first, a lieu is given on the building; and *403 the act provides that such lien, when perfected as required by the seventh section, shall commence from the time the materials were furnished, or the labor was performed. To the second, no lien is given on the building, but the owner is required, when notified in a specified manner by the subcontractor, to retain for his benefit the amount due him, for work and materials, “ out of his subsequent payments tc the contractor.” If the owner fails to pay the subcontractor as provided by the act, the fifth section authorizes him to recover of the owner by suit “ any balauce due by the owner to his contractor, under the contract with him at the time of the notice first given as aforesaid, or subsequently accruing to such contractor, under the same, if such amount shall be less than the sum due from said contractor to his creditor.” The act does not, in express terms, create a lien or charge in favor of the subcontractor, but such undoubtedly is its necessary effect and operation. Nor does it expressly state when such lien or charge shall attach, but it is equally as clear as that there is a lien at all, that it begins at the time the subcontractor’s attested account is delivered to the owner. McCullum v. Richardson, 2 Handy, 274; Oates v. Haley, 1 Daily, 338; Superintendent, etc. v. Heath, 15 N. J. Eq. 22. There is nothing, then, in the character of the lien of Copeland & Co. that antedates the assignment to the other party.
Moreover, the act, by virtue of the subcontractor’s notice to the owner, only fastens a lien or charge upon the owner’s “subsequent payments to the contractor,” or upon “any balance due by the owner to his contractor, ... or subsequently accruing to such contractor,” at the time the notice is given.
It seems to be the policy of the act to confer upon the subcontractor only the right to be subrogated to the claims of the contractor, under his contract with the owner, at the time the requisite notice is given. If, therefore, the contractor has then no claim against the owner, or there are no more payments due or to be made to him, the act does not in terms or effect bind the owner to retain anything for *404 the benefit of the subcontractor, and he obtains no hen outlie amount the owner is bound in law and equity to pay to-another.
The position of the subcontractors in this respect is much the same as if they had garnished the owner by proceeding in attachment. Both forms of proceeding are statutory remedies to subject a claim due to a debtor to the payment of his debt, and whenever available, are, in effect, substantially alike. It is a fundamental principle-that an attaching creditor can stand on no better footing, as against bona fide purchasers or assignees of his debtor,, than the latter does at the time of the attachment or garnishment. And it is well settled that where an assignment of a chose in action is made on good consideration and bona fide, the creditors of the assignor can not avoid or defeat it by garnishment or other similar process, although the-debtor had no notice of the assignment previous to the attachment, if it be given to him in time to enable him to-bring it to the attention of the court before judgment is rendered against him as garnishee. Drake on Attachments, sec. 527; Wakefield, v. Martin, 3 Mass. 558; Dix v. Cobb, 4 Mass. 508; Warren v. Copelin, 4 Met. 598; Littlefield v. Smith, 17 Maine, 327; Winch v. Keeley, 1 Dunf. & East, 619; Walling v. Miller, 15 Cal. 38; Smith v. Clarke, 9 Iowa, 241; Nesmith v. Dunn, 8 Penn. St. 1; Wilson v. Davisson, 5 Munf. 178; Tazewell v. Barrett, 4 Hen. & Munf. 259; Anderson v. De Soer, 6 Grat. 364; Chitty on Cont. 139; Daniel on Attachment, 108.
In the case before us we are not informed when the owner was notified of the assignment, nor is it material,, for he neither paid nor assumed to pay the amount owing by him to either party, or suffered judgment to go against him before it was brought to the knowledge of the court,, and the full amount was brought in to be disposed of under the order of the court, in a case where all the claimants are parties. It would seem, then, upon the principles established in analogous cases, that the assignees in this case must prevail. Regarded merely as a race between creditors- *405 to secure their respective claims, where their equities, as in this case, are equal, their lien or claim, having accrued prior in time to that of the other parties, is better in right. Muir v. Schenck, 3 Hill, 228; McCullum v. Richardson, supra; The Superintendent, etc. v. Heath, 15 N. J. Eq. 22, The statutory rule of equality applicable to those holding mechanics’ liens on the building has no application to these parties, nor, indeed, as the law then stood, did it apply to •subcontractors claiming under the statute.
To say the least, the plaintiffs in error recovered in the District Court all they were entitled to; and, if they recovered more, it is sufficient to say, the other party does not •complain. As we discover no error of which the plaintiffs in error have reason to complain, the judgment of that •court will be affirmed.